**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | | |
|---|---|---|
| **FIRST TRINITY CAPITAL CORPORATION** | § § § | **PLAINTIFF/ COUNTER-DEFENDANT** |
| **V.** | § § § | **Civil No. 3:12CV891-HSO-RHW** |
| **CANAL INDEMNITY INSURANCE COMPANY and SOUTHERN CROSS UNDERWRITERS, INC.** | § § § § | **DEFENDANTS/ COUNTER-CLAIMANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion for Summary Judgment [17] filed by Defendants Canal Indemnity Insurance Company and Southern Cross Underwriters, Inc., on October 18, 2013. This Motion is now fully briefed. After due consideration of the record, the submissions on file, and relevant legal authorities, the Court finds that Defendants' Motion for Summary Judgment [17] should be granted and that Plaintiff First Trinity Capital Corporation's claims in this civil action should be dismissed with prejudice.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  Factual Background

Plaintiff First Trinity Capital Corporation ["First Trinity" or "Plaintiff"] engages in the business of financing insurance premiums. First Am. Compl. [7] at

15.  Premium financing

> involves an advance by the finance company to the insurance company or
> its agent of the premium due for the full term of the policy.  This advance
> is then repaid by the insured to the finance company in amortized
> monthly installments which include an additional amount to cover
> financing charges.  The finance company is secured in making this
> advance payment by obtaining the right to cancel the policy and to receive
> the return premium due upon cancellation if timely repayments are not
> made.

*Baker & Co., Florida v. Preferred Risk Mut. Ins. Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978).

At issue in this case are three insurance policies financed by First Trinity. First Trinity financed insurance policy premiums on behalf of Harper Trucking ["Harper"], Eddie Johnson ["Johnson"], and Anthony Greg Groves ["Groves"] [collectively, the "Insureds"] which were purportedly obtained by the Insureds from Defendant Canal Indemnity Insurance Company ["Canal"] through Central Mississippi Insurance ["CMI"].  First Am. Compl. [7] at 16–21.  According to First Trinity, the Harper policy had effective dates of June 11, 2009, to June 11, 2010, the Johnson policy was issued by Canal Insurance as Policy No. PIA04839201, and the Groves policy was issued by Canal Insurance as Policy No. PIA04868901.  *Id.* at 16, 18, 20.[1]

According to the First Amended Complaint [7], First Trinity agreed to tender the annual premiums on each policy, less each Insured's down payment.  In

---

[1]First Trinity has not provided a policy number for the Harper policy or any effective dates for the Johnson or Groves policies.

exchange, each Insured executed a premium finance agreement[2] in which they promised to repay First Trinity the monies advanced plus interest and finance charges, in amortized monthly installments.  *Id.*  Each Insured also assigned all unearned premiums to First Trinity and granted First Trinity a power of attorney to cancel the policies after notice and receive the unearned premiums on the policies in the event of default under the premium finance agreement.  First Am. Compl. [7] at 16–21.[3]

First Trinity contends that it informed Canal and Canal's general agent, Defendant Southern Cross Underwriters, Inc. ["Southern Cross"] [collectively, "Defendants"], that it had financed each Insured's premium payments and that each Insured's rights in any unearned premiums had been assigned to First Trinity.  *Id.* at 17–21.  When the Insureds defaulted on their repayment obligations, First Trinity claims that it sent Notices of Cancellation for each policy to the respective Insured, as well as to Defendants.  *Id.*  First Trinity alleges that although Defendants were obligated under Mississippi law to repay to First Trinity all

---

[2]A premium finance agreement is

> an agreement by which an insured or prospective insured promises to pay to a premium finance company the amount advanced or to be advanced to an insurer or to an insurance agent or broker in payment of premiums of an insurance contract together with interest or discount and a service charge . . . .

Miss. Code § 81-21-1(c).

[3]The only premium finance agreement supplied in the record is that of Harper.  *See* Harper Premium Finance Agreement [21-1] at 1–2.  The parties have not provided the premium finance agreements for either Johnson or Groves.

unearned premiums as of the date of cancellation of each policy, they have refused

to do so.  *Id.*

B.    Procedural History

First Trinity filed a Complaint [7] in the Circuit Court of Hinds County,

Mississippi, First Judicial District, on August 6, 2012, naming Canal and Southern

Cross as Defendants.  Compl. [7] at 2.  On September 4, 2012, First Trinity filed a

First Amended Complaint [7], which advances claims against Defendants for breach

of statutory law and negligence per se, breach of contract, negligence, fraud,

constructive trust, and actual and apparent authority.  First Am. Compl. [7] at

22–27.[4]  First Trinity seeks the return of the unearned premiums it paid on behalf

of Harper, Johnson, and Groves, as well as punitive damages, costs, expenses,

interest, and attorneys' fees.

Defendants removed the case on December 27, 2012, invoking this Court's

diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Notice of Removal [1] at 1–2.

Southern Cross and Canal each filed Answers and Counterclaims [3], [5] against

---

[4]On March 26, 2013, First Trinity filed a Motion [12] in this Court for leave to amend its Complaint and attached a proposed Second Amended Complaint [12-1].  The proposed Second Amended Complaint sought to add a claim against Defendants for ratification and estoppel.  Proposed Second Am. Compl. [12-1] at 16–17.  The Magistrate Judge granted First Trinity's Motion to Amend by text order entered on April 22, 2013.  First Trinity never filed the Second Amended Complaint into the record. For this reason, Southern Cross and Canal focus on the claims asserted by First Trinity in the First Amended Complaint.  Defs.' Mem. in Supp. of Mot. for Summ. J. [18] at 1, 2 n.1.  First Trinity does not address this argument or its proposed ratification and estoppel claims in its Response.  Based on the foregoing, the Court finds that the First Amended Complaint is the operative pleading and will proceed accordingly in resolving Defendants' Motion for Summary Judgment.

First Trinity.  In their present Motion, Southern Cross and Canal seek dismissal of all claims asserted against them in the First Amended Complaint.  Mot. [17] at 2.

First Trinity claims that Defendants failed to return unearned premiums after their receipt of notices of cancellation of the Insureds' insurance policies, as required by Mississippi law.  First Am. Compl. [7] at 22–24.  In the alternative, First Trinity asserts that in the event the insurance policies were not actually issued by Canal, Defendants perpetrated a fraud by and through their purported agent, CMI.  First Trinity charges that Defendants were negligent in their supervision of CMI as their purported agent.  *Id.* at 24–25.  The parties indicate in their summary judgment briefing that Jan Gunn ["Gunn"], the owner of CMI, made misrepresentations and misappropriated certain premium finance funds rather than turning them over to the insurers.  As a result, First Trinity has filed a number of other lawsuits in this Court against various insurance companies.  *See* Defs.' Mem. in Supp. of Mot. for Summ. J. [18] at 5–6; Pl.'s Mem. in Supp. of Resp. [24] at 2, 7, 19; *see also, e.g., First Trinity Capital Corp. v. Catlin Specialty Ins.*, No. 3:13cv9-TSL-JMR (S.D. Miss.); *First Trinity Capital Corp. v. Arch Ins. Co.*, No. 3:12cv310-HTW-LRA (S.D. Miss.); *First Trinity Capital Corp. v. State National Ins. Co.*, No. 1:12-cv-253-LG-JMR (S.D. Miss.); *First Trinity Capital Corp. v. Gramercy Ins. Co.*, No. 3:11-cv-795-CWR-FKB (S.D. Miss.).  First Trinity asserts that it first learned of Gunn's fraud in August 2009.  Pl.'s Mem. in Supp. of Resp. [24] at 5; Aff. of Clarence Zahn [21-3] at 5–6.

First Trinity alleges that CMI acted as Defendants' agent because CMI exhibited actual and apparent authority to do all acts on behalf of Defendants incidental to the sale of the insurance policies and the collection of their premium payments. First Trinity further asserts that Defendants have obtained and/or are holding property which in equity and good conscience belong to First Trinity such that the Court should impose a constructive trust on the funds. *Id.* at 26.

Defendants argue that CMI's Gunn was not acting as their agent, but as First Trinity's agent, during the solicitation, negotiation, execution, and performing of the premium finance agreements, such that any claims based upon an agency theory fail as a matter of law. Defs.' Mem. in Supp. of Mot. for Summ. J. [18] at 4–6. Even if the Court finds that Gunn was Defendants' agent, Defendants posit that dismissal is nevertheless required because Gunn served as a dual agent. *Id.* at 6–7. Defendants also argue that First Trinity cannot and has not presented any evidence supporting its claims for negligence, imposition of a constructive trust, or punitive damages. *Id.* at 7.[5]

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

---

[5]Defendants also assert in their Motion [17] that First Trinity is prohibited from challenging the Motion with any witness or document because First Trinity failed to comply with Federal Rule of Civil Procedure 37(c)(1). First Trinity disputes this charge. Because summary judgment in Defendants' favor is warranted even considering all evidence presented, the Court need not resolve this discovery issue.

material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). If the movant meets this burden, "the nonmovant must go beyond the

pleadings and designate specific facts showing that there is a genuine issue for

trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To

rebut a properly supported motion for summary judgment, the opposing party must

show, with "significant probative evidence," that there exists a genuine issue of

material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

In deciding whether summary judgment is appropriate, the Court views facts and

inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l

Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely

colorable, or is not significantly probative, summary judgment is appropriate.

*Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516

(5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

B.    Analysis

The Court has jurisdiction over this matter pursuant to diversity of

citizenship under 28 U.S.C. § 1332. "Under the *Erie* doctrine, federal courts sitting

in diversity apply state substantive law and federal procedural law." *Gasperini v.

Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v.

Tompkins*, 304 U.S. 64, 78 (1938). The Court applies Mississippi law in this case.

*See, e.g., Truong v. Bank of America, N.A.*, 717 F.3d 377, 382 (5th Cir. 2013).

1.    <u>Plaintiff's Claims for Breach of Statutory Law, Negligence Per Se, and Breach of Contract</u>

The thrust of these three claims is that Defendants failed to return unearned premiums to First Trinity after First Trinity tendered them notices of cancellation of the Insureds' policies.  First Am. Compl. [7] at 22–24.  Defendants argue that First Trinity cannot supply any evidence to create a genuine issue of material fact as to whether it is entitled to a refund of any unearned premiums.  Defs.' Mem. in Supp. of Mot. for Summ. J. [18] at 3–4.  Defendants also contend that First Trinity cannot produce valid premium finance agreements, notices of intent to cancel along with proof of delivery, or notices of cancellation for the three Insureds' policies.  *Id.* at 4 (citing Miss. Code §§ 81-21-13 & 81-21-19).

Plaintiff has not explained which statute forms the basis of its breach of statutory law and negligence per se claims.  It appears these claims are premised upon Mississippi Code § 81-21-21, which provides in relevant part that

> [w]henever a financed insurance contract is cancelled, the insurer shall return to the premium finance company as soon as reasonably possible whatever gross unearned premiums are due under the insurance contract, and also shall furnish to the premium finance company a report setting forth an itemization of the unearned premiums under the policy that includes a detailed mathematical summary of the computation of the return premium.

Miss. Code § 81-21-21(1).  If a premium finance agreement contains a power of attorney clause which enables the premium finance company to cancel an insurance contract, the premium finance company must follow the procedure contained in Mississippi Code § 81-21-19.  Under this section,

(2)     Not less than ten (10) days' written notice shall be mailed to the insured, at the last known address shown on the records of the premium finance company, of the intent of the premium finance company to cancel the insurance contract unless the default is cured within such ten-day period.

(3)     After expiration of such ten-day period, the premium finance company may thereafter cancel such insurance contract or contracts by sending to the insurer a notice of cancellation.  The insurance contract shall be cancelled as if such notice of cancellation had been submitted by the insured, but without requiring the return of the insurance contract or contracts.  The premium finance company shall also mail a copy of the notice of cancellation to the insured at the last known address shown on the records of the premium finance company.

Miss. Code § 81-21-19(2)–(3).

With the exception of listing their purported policy numbers in the First Amended Complaint, First Trinity has offered no information regarding Johnson's and Groves' insurance policies.  First Trinity has supplied no evidence that these policies ever existed or, if they did, whether there were cancelled or whether any unearned premiums were due under Mississippi Code § 81-21-21.  In the absence of an insurance contract, there can be no "unearned premiums" and thus no violation of § 81-21-21.  *First Trinity Capital Corp. v. Catlin Specialty Ins.*, No. 3:13-cv-9-TSL-JMR, 2013 WL 62300099, at *3 (S.D. Miss. Dec. 2, 2013) (citing *Insurasource, Inc. v. Phoenix Ins. Co.*, 912 F. Supp. 2d 433, 439–440 (S.D. Miss. 2012)).  Because First Trinity does not address either the Johnson or Groves policies in response to summary judgment, it has not carried its summary judgment burden with respect to these policies.

As for the Harper policy, Defendants maintain that Canal actually issued this policy.  Defs.' Reply [26] at 1, 5–10.  According to Defendants, First Trinity

never cancelled the Harper policy, such that all premiums paid were actually earned. *Id.* Defendants have submitted evidence that First Trinity never cancelled the Harper policy and that the Harper policy expired at the end of its term on June 11, 2010. Aff. of Tammy Vaughn [26-1] at 1–2; Aff. of Joseph E. Horsman [26-2] at 1–2. Defendants also have presented competent evidence that First Trinity's Southern Insurance Services requested that vehicles insured under the Harper policy be deleted on or around December 8, 2009, and February 4, 2010, and that a vehicle be added for insurance coverage under the Harper policy on or around February 25, 2010, Aff. of Joseph E. Horsman [26-2] at 2, all of which occurred after the time First Trinity claims that it cancelled the Harper policy.

In its Response, First Trinity maintains that it cancelled the Harper policy in accordance with the premium finance agreement and cites Exhibit "A" to its Response in support of this assertion. While it appears that First Trinity may have supplied the insured notice of impending cancellation pursuant to Mississippi Code § 81-21-19(2), the seven pages of documents contained in Exhibit "A" to First Trinity's Response do not establish that the Harper policy was actually cancelled in accordance with Mississippi Code § 81-21-19(3), and a reasonable jury could not reach such a conclusion based upon these documents alone. First Trinity has not offered any other competent summary judgment evidence which would permit a reasonable jury to make such a finding. First Trinity has not carried its summary judgment burden on its breach of statutory law, negligence per se, and breach of contract claims.

2.    <u>First Trinity's Remaining Claims</u>

First Trinity also advances claims for negligence, fraud, imposition of a constructive trust, actual and apparent authority, and punitive damages.  These claims rest upon First Trinity's theory that CMI was acting as Defendants' authorized agent.  *See* First Am. Compl. [7] at 24–28.  In their Motion for Summary Judgment, Defendants maintain that CMI was not acting as their agent, but even if it were, CMI through Gunn was also acting as First Trinity's agent.  Defs.' Mem. in Supp. of Mot. for Summ. J. [18] at 4–7; Defs.' Reply [26] at 4–5.  Defendants argue that the theory of dual agency would require dismissal of these claims "without regard to the agency relationship or lack thereof between the Defendants and Gunn . . . ."  Defs.' Mem. in Supp. of Mot. for Summ. J. [18] at 6 (citing *Hodges v. Mayes*, 242 S.E.2d 160 (Ga. 1978)).

First Trinity responds that CMI acted as Defendants' agent and possessed at least apparent authority to act on behalf of Southern Cross.  Pl.'s Mem. in Supp. of Resp. [24] at 12–19.  First Trinity asserts that at a minimum there exists a genuine issue of material fact as to whether CMI acted as Defendants' agent in connection with the relevant transactions.  *Id.* at 19.  First Trinity insists that Defendants failed to supervise CMI because Southern Cross knew as early as October 2007 that CMI was failing to forward premiums that CMI had received on at least one policy.  *Id.* at 19–20.

Both *Insurasource, Inc. v. Cowles & Connell of NY, Inc.*, No. 2:11-cv-76-KS-MTP, 2011 WL 4397487 (S.D. Miss. Sept. 21, 2011), *aff'd*, 467 F. App'x 337, 338 (5th

Cir. 2012), and *First Trinity Capital Corp. v. Catlin Specialty Ins.*, No. 3:13-cv-9-TSL-JMR, 2013 WL 6230099 (S.D. Miss. Dec. 2, 2013), are instructive on the question of CMI's agency.

In *Insurasource*, Rocco was an insurance agency which contacted plaintiff Insurasource to solicit its insurance premium financing services.  Rocco then entered into a broker's agreement with defendant Cowles & Connell, a general agent for a number of insurance companies for which Cowles & Connell was authorized to bind and issue insurance policies and collect premiums.  *Insurasource*, 2011 WL 4397487 at *1.  After several Rocco accounts defaulted, Insurasource contacted Cowles & Connell to inquire about the unearned premiums and was told that Rocco had never remitted premiums for some of the policies.  *Id.*  As a result, Insurasource had submitted a number of finance agreements to Cowles & Connell for which Cowles & Connell had never bound policies.  *Id.*  Insurasource sued Cowles & Connell for the alleged fraud perpetrated by Rocco and charged that because Rocco was Cowles & Connell's authorized agent, payments made to Rocco constituted payments to Cowles & Connell.  *Id.* at 2.  The question presented was whether Cowles & Connell was a party to the insurance premium financing agreements because Rocco purportedly acted as its agent.  *Id.* at 3.

The *Insurasource* Court cited the following Mississippi agency principles in making its determination:

> An agency relationship may be express or de facto.  A de facto agency may be proven by the presence of three elements at the time of contracting: (1) "manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal," (2) "the

agent's acceptance of the arrangement," and (3) "the parties understood
that the principal will control the undertaking."
                              *   *   *
Whether an agency relationship exists is "to be determined by the
relations of the parties as they exist under their agreements or acts, with
the question being ultimately one of intention . . . .  If relations exist
which will constitute an agency, it will be an agency whether the parties
understood the exact nature of the relation or not.  Moreover, the manner
in which the parties designate the relationship is not controlling, and if
an act done by one person in behalf of another is in its essential nature
one of agency, the one is the agent of such other notwithstanding he is not
so called.

*Id.* at *3 (quoting *Stripling v. Guardian Energy Exploration Co.*, 234 F.3d 863, 870
(5th Cir. 2000)).

Applying these principles, the *Insurasource* Court reasoned that

the financing agreements themselves provide no evidence that Rocco
acted on Defendant's behalf.  The only parties other than Plaintiff to sign
the financing agreements were Rocco and some of the primary insureds.
In some of the contracts, Rocco signed on behalf of the primary insured
as an "Authorized Signatory."  In others, the primary insured signed the
contract.  In each of the contracts, Rocco signed as the "AGENT."  Each
contract lists the insurance company writing the policy and the general
agent through whom the policy was to be purchased.  Defendant is listed
as the "general agent" on each contract.  However, there is no indication
in the contracts themselves that either the insurance company or the
general agent were parties to the negotiation, execution, or performance
of the financing agreements.

*Id.* at *4.

The Court also found that the broker's agreement between Rocco and Cowles
& Connell did not establish the existence of an agency relationship.  *Id.*  The
agreement was clear that Rocco was not authorized to accept premium payments on
behalf of Cowles & Connell, and while Rocco was authorized to submit applications
for insurance to Cowles & Connell, it was not authorized to bind coverage without
receiving Cowles & Connell's prior authorization.  *Id.*  Nor was Rocco authorized to

accept payment of premiums or deposit checks made payable directly to Cowles & Connell. *Id.* Instead, Cowles & Connell sent Rocco a monthly billing of premiums, and Rocco guaranteed Cowles & Connell payment of all premiums for policies it placed. *Id.* The Court concluded that there was no evidence that Cowles & Connell represented to Insurasource that Rocco was acting as its agent with regard to the premium financing agreements, and that the e-mails among the three parties indicated that neither Insurasource nor Cowles & Connell knew or controlled what Rocco was doing. *Id.*

*Catlin Specialty* involved facts similar to those present in this case. At issue was a premium finance agreement allegedly entered into between First Trinity and B&W Auto Sales to finance B&W's premium for a garage policy obtained from Catlin Specialty Insurance through Catlin's general agent, Crump. *Catlin Specialty*, 2013 WL 6230099 at *1. After B&W defaulted on its repayment obligations and Catlin and Crump did not return the unearned premiums, First Trinity filed a complaint in this Court asserting the same causes of action as those raised here. *Id.* at *2. After First Trinity voluntarily dismissed Catlin, Crump filed a motion for summary judgment. In considering the question of agency, the *Catlin Specialty* Court held that "there is no proof that Crump had any involvement in the solicitation, negotiation, execution, or performance of the financing agreement, or that it 'was in control of [CMI/Gunn] throughout the undertaking.'" *Id.* at *6 (quoting *Insurasource*, 2011 WL 4397487 at *5). The Court concluded that "First Trinity has failed to create a genuine issue of material fact as to its allegation that

CMI/Gunn was Crump's agent." *Id.* The *Catlin Specialty* Court also found no evidence to support the theory that CMI or Gunn possessed apparent authority to act on behalf of Crump, explaining that "the mere fact that CMI/Gunn had previously placed policies through Crump provides no indication as to the exact nature or extent of CMI/Gunn's authority." *Id.*

In this case, First Trinity has not offered sufficient competent evidence that either Defendant had any involvement in the solicitation, negotiation, execution, or performance of the financing agreement, or that either Defendant was in control of CMI or Gunn throughout the undertaking. First Trinity has failed to create a genuine issue of material fact as to its allegation that either CMI or Gunn acted as the agent of either Defendant, or that CMI and Gunn had apparent authority to bind either Defendant. *See id.* In sum, Plaintiff has not shown the existence of a triable fact question as to its allegation that CMI or Gunn acted as an agent of either Defendant or exhibited apparent authority to act on either Defendant's behalf. Summary judgment in Defendants' favor on Plaintiff's remaining claims is therefore warranted.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment [17] will be granted, and Plaintiff's claims against Defendants will be dismissed with prejudice. To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

-15-

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [17] filed by Defendants Canal Indemnity Insurance Company and Southern Cross Underwriters, Inc., on October 18, 2013, is **GRANTED**, and Plaintiff First Trinity Capital Corporation's claims in this civil action are **DISMISSED WITH PREJUDICE**.  Defendant Southern Cross Underwriters, Inc.'s and Defendant Canal Indemnity Insurance Company's Counterclaims [3], [5], remain pending.

**SO ORDERED AND ADJUDGED** this 10th day of January, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE